**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **CHRISTINA NIELSEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **v.** | ) | **1:23-CV-02353-MLB-RDC** |
| | ) | |
| **CROSSCOUNTRY MORTGAGE,** | ) | |
| **LLC, and STEVEN BOCCA,** | ) | |
| | ) | |
| **Defendants.** | | |

**CROSSCOUNTRY MORTGAGE, LLC'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Pursuant to Federal Rule of Civil Procedure 72(b),  Defendant CrossCountry Mortgage, LLC ("CrossCountry") hereby files its Objections to the portion of the Magistrate Judge's Report and Recommendation ("R&R"), which recommended denying Defendant's Motion for Summary Judgment on Plaintiff's state law tort claims and her claim for retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Doc. 100).

## I.    INTRODUCTION

Plaintiff Christina Nielsen ("Nielsen") filed her Complaint against CrossCountry, her former employer, and her former supervisor, Steven Bocca, alleging violations of Title VII, assault and battery, and negligent retention and supervision (Doc. 1). After discovery, CrossCountry filed a Motion for Summary

Judgment (Doc. 90).  Plaintiff  opposed the motion and CrossCountry filed a reply (Docs. 94 and 97). On December 18, 2024, the Magistrate Judge issued a Report and Recommendation ("R&R"), which narrowed the scope of Nielsen's claims, but ultimately recommended that CrossCountry's motion be denied.

## II.  OBJECTIONS

CrossCountry objects to the Magistrate Judge's recommendation that summary judgment be denied on Nielsen's Title VII retaliation claim and it objects to her recommendation that summary judgment be denied on Nielsen's state law tort claims for negligent retention and negligent supervision.[1] For the reasons that follow, CrossCountry requests that this Court reject the Magistrate Judge's recommendation on these claims after it conducts its *de novo* review, and grant CrossCountry's motion for summary judgment on these challenged claims. See generally, 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). In the interest of judicial economy, CrossCountry incorporates by reference its Motion for Summary Judgment, Memorandum in

---

[1] While CrossCountry disagrees with the Magistrate Judge's recommendation that summary judgment be denied on Nielsen's Title VII hostile work environment claim, its objections are limited to Counts II, IV, and V of her Complaint (Doc. 1). Furthermore, even though CrossCountry is limiting its objections within those counts as well, its decision to forego challenging every aspect of the Magistrate Judge's opinion does not mean that CrossCountry agrees with those unchallenged portions and it does not waive the right to challenge Plaintiff's ability to meet the elements of any of her claims at trial.

Support of Summary Judgment, its Reply in Support of Summary Judgment, its

Statement of Material Facts, and the evidence cited therein. (Docs. 90, 97, and 98).

### III.  <u>ARGUMENT</u>

**A.**  ***The Magistrate Judge erred in recommending that summary judgment be denied on Nielsen's Title VII claim for retaliation (Count II).***

The Magistrate Judge erred in recommending that CrossCountry's motion for

summary judgment on Nielsen's claim for retaliation be denied. Nielsen did not

suffer an adverse employment action and there is no genuine issue of material fact

on the issue of pretext.  As this Court is aware, Title VII prohibits employers from

retaliating against employees from reporting or opposing discrimination. 42 U.S.C.

§ 2000e-3(a); <u>see also</u> <u>EEOC v. Total Sys. Servs.</u>, 221 F.3d 1171, 1174 (11th Cir.

2000). If a plaintiff relies on circumstantial evidence to prove retaliation, courts in

this circuit apply the *McDonnell Douglass* burden shifting framework. <u>Johnson v.</u>

<u>Miami-Dade Cnty</u>., 948 F.3d 1318, 1325 (11th Cir. 2020). Under that framework,

the plaintiff must first establish a *prima facie* case of retaliation by showing that she

(1) engaged in a protected activity; (2) suffered a materially adverse employment

action; and (3) there was a causal connection between the protected activity and the

adverse employment action. <u>Id</u>.

From there, the burden shifts to the employer to articulate a legitimate, non-

discriminatory reason for its employment action. <u>Id.</u> If the employer does so, the

presumption of retaliation "drops from the case" and the burden shifts back to the plaintiff to show that the employer's reason "was not the real reason for the decision, but a pretext for discrimination." Id. (citations omitted). A plaintiff attempting to establish pretext must present concrete evidence showing that the proffered reasons were pretext for discrimination. See Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012). Here, Plaintiff did not meet her burden on this claim of establishing a genuine issue of material fact for trial and the Magistrate Judge erred in recommending that summary judgment be denied.

In its motion, CrossCountry did not dispute the first and third elements of Nielsen's *prima facie* case, i.e., it did not dispute that Nielsen engaged in protected activity when she raised allegations of sexual harassment and it did not dispute the causal connection given the proximity of Nielsen's allegations to the separation of employment. CrossCountry did, however, dispute Nielsen's allegations that she suffered an adverse employment action because the evidence overwhelmingly demonstrated CrossCountry accepted Nielsen's resignation after she communicated her intent to resign, refused to cooperate with CrossCountry's investigation of her claim, and there was no position for her at another branch.

**1.    The Magistrate Judge Erred in Finding that Nielsen suffered an adverse employment action.**

In its motion for summary judgment, CrossCountry argued that Nielsen failed to plead or prove that she suffered an adverse employment action when she

voluntarily resigned from her job. See, Porraz v. Kia Ga., Inc., No. 3:21-cv-00216, 2023 U.S. Dist. LEXIS 125314 at *53, 57 (N.D. Ga. 2023) (confirming that voluntary resignation cannot support a claim for retaliation). As the Magistrate Judge noted, Nielsen indisputably "communicated her intent to resign on May 18, 2022" both to the head of Human Resources, Michelle Novak, and to her coworkers. (R&R at 31). However, the Magistrate Judge found that because Novak invited Nielsen to reconsider her resignation and because Nielsen later stated she was rescinding her resignation, CrossCountry's eventual acceptance of her resignation could nevertheless be deemed an adverse employment action.[2] (R&R at 31). CrossCountry disagrees.

In support of her conclusion, the Magistrate Judge cited to two court opinions which held that an employers' refusal to accept a rescission of resignation could be construed as an adverse action. (R&R at 31) (citing *Bennett v. Tarrant Cty. Coll. Dist.*, No. 3:22-cv-0289, 2023 WL 6628783, at *4 (N.D. Tex. Oct. 10, 2023) and *Ferrando-Dehtiar v. Anesthesia Grp. Of Albany*, P.C., No. 1:20-cv-01373, 2024 WL 134345, at *13 (N.D.N.Y. March 29, 2024)). However, the Magistrate Judge failed to equally consider the number of courts which have held that an employers' refusal

---

[2] The evidence does not show that Novak "immediately talked her out of [resigning]." (R&R at 31). Rather, Novak testified that she would give Nielsen a couple days to think about resigning because she knew Nielsen was upset during the phone call. (Novak Dep. at 207:17-208:3).

to allow an employee to rescind their resignation is *not* an adverse employment action. See generally, Jones v. McCormick & Shmick's Seafood Rests, Inc., No. 12-4503, 2014 U.S. Dist. LEXIS 58460, 2014 WL 1669808, at *5 (D.N.J. Apr. 28, 2004) (refusal to allow an employee to rescind his resignation is not an adverse employment action); Hibbard v. Penn-Trafford Sch. Dist., No. 13-622, 2014 U.S. Dist. LEXIS 20237, at *10 (W.D. Pa. Feb. 19, 2014) (citing numerous cases that support the proposition that failing to accept rescission of a voluntary resignation is not an adverse employment action).

In any event, this case is different from the cases relied upon by the Magistrate Judge, as CrossCountry had no other position for Nielsen at another branch and, importantly, Nielsen failed to cooperate with CrossCountry or even speak to anyone without going through her lawyer or communicating in writing. (See, Defendant's Statement of Material Facts at ¶¶ 33, 34, 36-37, and related exhibits). Under these circumstances, CrossCountry's acceptance of Nielsen's resignation was not an adverse action, and there is case law to support this conclusion. See e.g., Henderson v. Mercy Catholic Med. Ctr., 2018 U.S. Dist. LEXIS 113191, at *14, 21-24 (employee's failure to comply with the employer's request to meet reinforced the employer's belief that the employee had resigned and it signaled that he had abandoned his position); Weisel v. Stericycle Communs. Solutions., No. 13-3003, 2015 U.S. Dist. LEXIS 9425, at *13-14, 38 (M.D. Pa. Jan. 28, 2015) (finding no

adverse action where the employer sought information from the employee and the employee failed to provide it); Henneman v. Kitsap Cty., 2018 U.S. Dist. LEXIS 123743, at *12, 19-20 (W.D. Wa. 2018) (finding no evidence of retaliation and noting that it was the plaintiff's own "request to rescind his resignation or reinstate his employment which created the tangible change in his employment status" and not any action taken by the defendant).

Here, no reasonable jury could find that CrossCountry accepted Nielsen's resignation *because* she engaged in protected activity and there is no evidence to support such a contention here. In any event, Nielsen's hostility and refusal to cooperate in CrossCountry's investigation was inexcusable and would have justified termination regardless. E.g., Harris v. Fulton-Dekalb Hosp. Auth., 255 F.Supp.2d 1347, 1357 (N.D. Ga. 2002 ("An employer does not buy a lawsuit when it attempts to comply with Title VII by investigating a claim of discrimination and dismissing an insubordinate employee who refuses to cooperate in the investigation."); Lattimore v. Initial Sec Inc., No. 03-civ-7579, 2005 U.S. Dist. LEXIS 16162 at *10 (S.D.N.Y. 2005) (refusal to cooperate with an internal investigation constitutes legitimate grounds for discharge). For these reasons, CrossCountry asks this Court to reject the Magistrate Judge's recommendation and find that Nielsen did not suffer an adverse employment action and, therefore, has failed to make a *prima facie* case of retaliation.

**2.      Nielsen did not carry her burden of proof on the issue of pretext.**

Even if Nielsen could persuade this Court that an issue of fact exists as to whether she suffered an adverse employment action, there is no genuine issue of material fact on the issue of pretext. Nielsen failed to carry her burden and the Magistrate Judge's proposed narrative to support an inference of pretext was error.

**a.      The Magistrate Judge created an inference of pretext based upon a statement by Bocca, which Nielsen herself did not rely upon, and which was disproved during discovery.**

Nielsen failed to carry her burden on the issue of pretext.  Despite it being her burden to establish a genuine issue of material fact, Nielsen simply relies on an absence of evidence to address this element. According to Nielsen, and in response to CrossCountry pointing out the lack of evidence to support pretext, Nielsen states only that "there is no evidence that 'accept[ing] Nielsen's resignation was [CrossCountry's] actual 'reason' for termination….'" (Plf. Opp'n at 23).  However, Nielsen cannot demonstrate a genuine issue of material fact on the issue of pretext without presenting concrete evidence showing that the proffered reasons were pretext for discrimination. See Lucy v. Georgia-Pacific Corrugated I, LLC, 497 Fed. Appx. 870, 2012 U.S. App. LEXIS 23451, * (11th Cir. Nov. 15, 2012) (citation omitted).

The only way for Nielsen to establish a genuine issue of material fact is "either directly by persuading the court that a discriminatory reason more likely motivated

the employer or indirectly by showing that the employer's proffered explanation is unlikely of credence." Id. (citations omitted). Nielsen failed to do this here, so the Magistrate Judge attempted to fill in the holes. According to the Magistrate Judge, CrossCountry's acceptance of Nielsen's resignation was, on its face, a legitimate and non-retaliatory rationale. (R&R at 32). But, on the issue of pretext, the Magistrate Judge went on to conclude that a jury could find pretext, largely relying on one "fact" that was not proffered by Nielsen and which did not come from CrossCountry.

According to the Magistrate Judge, "Bocca was one of [CrossCountry's] top producing loan officers nationwide…." (Id.). And the Magistrate Judge put heavy weight on this "fact" when recommending that this Court deny CrossCountry's motion, going so far as to say that a "reasonable jury might reject CCM's explanation and reach the following conclusion: CCM did not want to lose one of its top earners, so the company – principally through its legal department – quashed sexual harassment complaints related to the Alpharetta branch, including Plaintiff's own." (R&R at 32-33).

However, this purported fact came from Bocca himself when he was asked at his deposition if he was one of the top producers for CrossCountry. As there was no foundation as to how Bocca would even know this information or where it came

from (considering that CrossCountry has 1,259 branches)[3] an objection was lodged to this line of questioning. (Bocca Dep. at 142:2-143:4). That a proper foundation be laid for this testimony is imperative, as testimony used to support or oppose a motion for summary judgment must be made on personal knowledge and show that the witness is competent to testify to the matters stated. Fed. R. Civ. P. 56(c)(4). Bocca's statement satisfies neither of these requirements and, as a result, there is no proper foundation for it being admitted or considered at summary judgment. Notwithstanding, the Magistrate Judge relied heavily upon this line of questioning from Bocca's deposition and referred to Bocca as being a "top producer" several times in the R&R as a reason to support an inference of pretext.

Furthermore, there is also no evidence that substantiates this statement and it was disproved during the course of discovery when CrossCountry produced the numbers regarding its profits from Bocca's branch upon request from Nielsen. Those numbers show that CrossCountry made very little (and in some years nothing) from that branch. This is presumably why Nielsen herself did not advance such an argument. But had Nielsen argued that CrossCountry deliberately quashed claims of sexual harassment because Bocca was a "top performer," CrossCountry would have entered into evidence the numbers disproving it. Nielsen did not,

---

[3] See, Declaration of Michelle Novak, attached to CrossCountry's motion as Exhibit A, ¶ 1).

however, make such an argument and, therefore, CrossCountry did not put this evidence in the record. As such, the Magistrate Judge's attempts at filling in the gaps with evidence to create an issue of fact on pretext—especially where those arguments were not even made by Nielsen and evidence produced in discovery proves otherwise—resulted in prejudice to CrossCountry on its motion.

While it is within the purview of the Magistrate Judge to review the record, it was error for the Magistrate Judge to rely so heavily on this small portion of Bocca's testimony that was incompetent evidence at best and under circumstances where CrossCountry had no opportunity to challenge it because Nielsen did not make this argument herself. While this might demonstrate pretext if there was actual competent evidence or even evidence *from CrossCountry* to support such a statement, there is not. Thus, it was error for the Magistrate Judge to find an inference of pretext here.

> **b.    The Magistrate Judge erred by finding an inference of pretext arising from CrossCountry's use of legal counsel.**

According to the Magistrate Judge, a jury could find that CrossCountry "through its legal department—quashed sexual harassment complaints related to the Alpharetta branch, including Plaintiff's own." (R&R at 33). The Magistrate Judge's comment about CrossCountry making decisions in a "black box" and her comment that there is "no evidence that the legal department conducted its own investigation"

ignores the fact that CrossCountry is entitled to maintain attorney/client privilege and work product protection over its legal matters. (See, R&R at 33).

As other courts have recognized, as long as a business is not relying on the results of an investigation and using it as both a sword and a shield, there is nothing nefarious about a business preserving its privilege and choosing not to waive it. See, Treat v. Tom Kelley Buick Pontiac GMC, Inc., No. 1:08-CV-173, 2009 U.S. Dist. LEXIS 46218, *38 (N.D. Inc. 2009) (finding that "because [the employer was] not actually relying on the adequacy of any investigation to support an affirmative defense, [it did] not place[] outside counsel's investigation at issue." Id. at *38; see also, Robinson v. Vineyard Vines, LLC, 2016 U.S. Dist. LEXIS 27948, at *13 Civ. 4972 (S.D.N.Y. Mar. 4, 2016) (finding the defendant did not put the sufficiency of its investigation at issue); City of Petaluma v. Superior Court, 248 Cal. App. 4th 1023, 204 Cal. Rptr. 3d 196, 201-02, 207 (Ct. App. 2016) (noting that the employer was not relying on a post-employment investigation and was therefore entitled to maintain privilege).

The Magistrate Judge seemingly also takes issue with the fact that CrossCountry's legal department communicated the information regarding its decision to part ways with Nielsen. (R&R at 32-33). However, the letter from the legal department was not sent to Nielsen, but to her attorney. (See, Defendant's Statement of Material Facts at ¶ 38, citing Ex. 4 to the Declaration of Michele

Novak). No inference of pretext can (or should) be made on the fact that a company used one of its lawyers to communicate with another lawyer, especially when Nielsen herself mandated that all communications from CrossCountry go through her attorney. (See, Defendant's Statement of Material Facts at ¶ 37, citing Ex. 16).

Furthermore, other than Nielsen, whose complaint was immediately investigated (albeit stifled and incomplete because Nielsen refused to cooperate or reveal what she later alleged in her Complaint), the other two "complaints" were raised by former employees for the first time in the context of an EEOC charge and as counterclaim in a lawsuit. Because these "complaints" began with legal proceedings, they were handled by counsel within the context of those proceedings. That CrossCountry used counsel to respond and defend those actions is hardly evidence that its legal department deliberately "quashed sexual harassment complaints." This inference is prejudicial and should be deemed impermissible.

Here, the Magistrate Judge should have evaluated the issue of pretext on the evidence (or lack thereof) proffered by Nielsen, instead of concluding that a reasonably jury could find that CrossCountry is using its lawyers to affirmatively violate the law. Nielsen failed to carry her burden to demonstrate pretext by pointing only to an "absence" of evidence and the facts and narrative relied upon by the Magistrate Judge to recommend denying summary judgment should not be used to help Nielsen overcome her failure to carry her burden here.

      **c.**    **In finding an inference of pretext, the Magistrate Judge imposed obligations upon CrossCountry that do not exist.**

In finding an inference of pretext, the Magistrate Judge also relied on the fact that CrossCountry did not take corrective action against Bocca, did not put prior complaints of discrimination in his personnel file, and did not send an HR representative to the Alpharetta branch. Again, none of these reasons were proffered by Nielsen as evidence of pretext, nor should they have been. CrossCountry's explanation for how it handles complaints and what it puts in its files was the subject of extensive testimony. There is no evidence that CrossCountry handled Nielsen's complaint any differently from how it handled any other employee complaints. If there was, that could be demonstrative of pretext, but there is no such evidence here.

CrossCountry's decision to accept Nielsen's resignation came after the company looked for remote opportunities for her and after it attempted multiple times to talk to Nielsen about her allegations. (See, Defendant's Statement of Material Facts at ¶¶ 33-34, 36-37, and related exhibits). CrossCountry paid Nielsen for approximately seven weeks while investigating her complaint and while trying to talk to her. (Id. at ¶¶ 40). And when it accepted her resignation, it did so while noting in her file her termination was voluntary *and she was eligible for re-hire*. (Id. at ¶ 39, and related exhibit). None of this supports an inference of pretext.

There is simply no credible and competent evidence that creates an issue of fact here. CrossCountry attempted to make an effort to arrive at a reasonably fair

estimate of the truth as it applies to Nielsen, and based on these facts there is no evidence that CrossCountry's actions in handling Nielsen and her complaint would dissuade a reasonable person from raising a complaint of their own. It simply cannot be that to avoid an inference of pretext, CrossCountry was required to keep Nielsen on its payroll indefinitely when she was unwilling to cooperate with the investigation she started, would only communicate through her lawyer, and where it had no other branch with an opening. For these reasons, CrossCountry requests that this Court reject the Magistrate Judge's recommendation and grant summary judgment on this claim.[4]

    **B.**     ***The Magistrate Judge erred in recommending that summary judgment be denied on Nielsen's state law tort claims for negligent retention and negligent supervision (Counts IV and V).***

Nielsen asserted claims against CrossCountry for negligent retention and negligent supervision (Counts IV and V). Negligent retention and negligent supervision are derivative claims that can only move forward if there is a viable, underlying state law tort claim. (R&R at 37) (citing <u>MARTA v. Mosley</u>, 280 Ga. App. 486, 489 (2006)). "Because it must be a state tort claim, federal Title VII

---

[4] The Magistrate Judge's reference to the termination of the "lone female employee" interviewed in connection with Nielsen's complaint, and who confirmed to Novak that Bocca had acted inappropriately, is not evidence of pretext either. (<u>See</u>, R&R at 33). The Magistrate Judge noted that both "Bocca and Helm participated in the termination decision," but did not cite to any evidence to establish that either Bocca or Helm were privy to the investigation file and even knew what this employee said. As such, this is mere speculation.

claims for sexual harassment and/or retaliation will generally not support a claim under Georgia law for negligent supervision and retention." Clark v. Alloy Wheel Repair Specialists, LLC, No. 1:18-cv-4746, 2021 WL 10428795, at *12 (N.D. Ga. Apr. 15, 2019). Here, the only underlying tort claim is Nielsen's claim for assault and battery against Bocca, not CrossCountry (Count III).[5]

### a. It was error for the Magistrate Judge to recommend denying CrossCountry's motion because Bocca did not move for summary judgment.

The Magistrate Judge recommends that CrossCountry's motion be denied because Bocca did not move for summary judgment on the assault and battery claims against him. According to the Magistrate Judge, because the claim against Bocca "is a live one, [CrossCountry] may in turn be held liable insofar as it failed to exercise ordinary care in retaining or supervising Bocca and such failure caused [Nielsen's] alleged harm." (R&R at 37). However, it was error for the Magistrate Judge to deny CrossCountry's motion for summary judgment on these claims simply because Bocca did not move for summary judgment.

---

[5] The Magistrate Judge also erred to the extent she relied upon Georgia state law that allows a cause of action for negligent retention and negligent supervision that are premised upon workplace sexual harassment. (R&R at 37). Here, the only viable underlying tort claim that Nielsen pleaded was her claim for assault and battery (Count III). To the extent there are other tort claims that Nielsen could have pursued under state law, it is irrelevant here.

Here, Nielsen's claim for assault and battery is independent from her claim against CrossCountry for negligent hiring and negligent retention. And, even if Nielsen is successful on her claim against Bocca, that would not change whether she is able to prove her claims against CrossCountry. The record is already developed regarding CrossCountry's knowledge of Bocca's alleged sexual harassment in the workplace and it does not support the conclusion that a reasonable jury could find in Nielsen's favor on this claim. There is no evidence that CrossCountry knew of any pre-disposition of Bocca to commit assault and battery.

### b.    There is no evidence that would have put CrossCountry on notice of Plaintiff's alleged assault and battery.

While an employer can be liable if it negligently retains or supervises an employee and that employee subsequently harms the plaintiff, the burden is on the plaintiff to prove that the employer knew or should have known of the other employee's tendencies to engage in the conduct which caused the plaintiff's injuries. In other words, in order to prevail on her claim of negligent retention and negligent supervision, Nielsen must prove that CrossCountry knew or should have known of Bocca's tendencies to engage in assault and battery and there is no such evidence. Nielsen carries the burden of establishing that CrossCountry knew of Bocca's tendencies to engage in the behavior relevant to her alleged injuries, i.e., Nielsen must establish that CrossCountry knew or should have known that Bocca was likely to commit assault and battery in the workplace.

Under Georgia law, "an assault occurs when 'all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another." <u>Stowers v. Protect Sec., LLC</u>, 2023 U.S. Dist. LEXIS 71941 at *18-19 (N.D.Ga. April 24, 2023) (quotations and citations omitted). Here, there is no evidence that Nielsen ever feared she was going to be the victim of a violent attack and there is no evidence that CrossCountry had any knowledge that Bocca was potentially violent or had a predilection to cause anyone physical injury.[6]  Importantly, none of the prior complaints against Bocca – Lisa Benjamin, Aydee Short, or Jessica Churio – involved any alleged touching, threatened touching, or indication that Bocca could (or would) assault anyone. (See, Doc. 92-8 at 30, 48-49, 51-55).

Similarly, a cause of action for battery requires an unlawful and offensive touching. <u>Bryant v. Norfolk S.R.R</u>, No. 5:20-cv-00225, 2020 U.S. Dist. LEXIS 240439 at *19 (M.D. Ga. Dec. 22, 2020) (explaining civil battery under Georgia law). In order to support a claim for negligent retention and negligent supervision premised upon the tort of battery, there has to be something in the record to support the employer's knowledge that an employee could possibly engage in battery.  <u>See</u>,

---

[6] Notably, Nielsen's own testimony belies any contention that she was scared of Bocca. Indeed, Nielsen testified that she told Bocca "more than once I'm not afraid of you. I'm trying to protect you." Defendant's Statement of Material Facts at ¶ 22 (citing Plaintiff's Deposition 135:2-4).

<u>Miller v. Yahata United States</u>, 2022 Ga. Super. LEXIS 3700 (2022) (denying summary judgment for the employer where there was evidence that the employer knew of a previous attempted battery as well as a previous battery, and noting that an employer has sufficient knowledge to support a claim for negligent retention and supervision when it knows of past instances of both verbal *and* physical sexual harassment by the employee); <u>see also</u>, <u>Little-Thomas v. Select Specialty Hosp.</u>, 333 Ga. App. 362, 363 (2015) (finding the employer had knowledge that the plaintiff's co-worker who sexually assaulted and raped her had knowledge of complaints about the employee's rough handling and knew of a prior incident where the employee had aggressive, nonconsensual sexual conduct with a female patient). In other words, cases upholding claims for negligent retention and negligent supervision for battery require more than knowledge of offensive comments. <u>See</u>, <u>Beckman v. Am. Airlines</u>, 2024 U.S. Dist. LEXIS 129607, *21-22 (C.D. Ca. June 28, 2024) (finding that it was not foreseeable that an employee would assault a co-worker simply because he made comments about sex and tried to show another employee pornography).

Here, there is also no evidence in the record to support the contention that CrossCountry knew (or should have known) that Bocca had any propensity to commit battery in the workplace. At best, the record here shows that Bocca was accused of making lewd comments to women. Thus, there is nothing to suggest that

CrossCountry was on notice of any propensity by Bocca to commit battery. Again, none of the other women (in the course of the legal proceedings) alleged unlawful touching. Cf., Alpharetta First United Methodist Church v. Stewart, 221 Ga. App. 748, 472 S.E.2d 532, 536 (Ga. App. 1996) (the plaintiff's evidence did not tend to show that the defendant knew or should have known that the employee had the propensity for the type of sexual misconduct alleged); Bunn-Penn v. S. Reg'l Medical Corp., 227 Ga. App. 291, 488 S.E.2d 747 (1997) (the evidence was not sufficient to put the defendant on notice that the employee had the propensity to commit the sexual assault alleged by the victim); MARTA v. Mosley, 280 Ga. App. 486, 490 (2006) (denying summary judgment on negligent retention claim where employer had knowledge that the offending employee touched and groped someone prior to committing the battery at issue).

Here, it was error for the Magistrate Judge to recommend denying summary judgment on Nielsen's state law claims for negligent retention and negligent supervision.  The Magistrate Judge ignored the lack of record evidence to support the contention that a reasonable jury could find that CrossCountry knew or should have known that Bocca had the propensity to commit assault and battery, instead relying only on the fact that Bocca did not move for summary judgment. But CrossCountry should not be forced to endure the time and expense of defending a claim at trial that is dead on arrival. Indeed, Nielsen did not even proffer evidence

to support these claims. Accordingly, this Court should reject the Magistrate Judge's recommendation and grant CrossCountry summary judgment on Nielsen's negligent retention and negligent supervision claims.

## IV.    <u>CONCLUSION</u>

For the reasons stated herein, and as further articulated in its Motion for Summary Judgment, Memorandum in Support, and Statement of Material Facts, Defendant CrossCountry Mortgage, LLC requests that this Court grant summary judgment on Plaintiff Christina Nielsen's Title VII retaliation claim and on her state law tort claims for negligent retention and negligent supervision.

Respectfully submitted this 2nd day of January, 2025.

**Lewis Brisbois Bisgaard & Smith LLP**

By:    / Kerri L. Keller
        John S. Snelling
        Georgia Bar No. 665759
        600 Peachtree Street, N.E., Suite 4700
        Atlanta, GA 30308
        (404) 567-6588 (telephone)
        (404) 467-8845 (facsimile)
        john.snelling@lewisbrisbois.com

        John R. Conley, *Pro Hac Vice*
        Ohio Bar No. 0084079
        Kerri L. Keller, *Pro Hac Vice*
        Ohio Bar No. 0075075
        1 Gojo Plaza, Suite 400
        Akron, OH 44311
        (330) 272-0000 (telephone)
        (330) 272-0019 (facsimile)

john.conley@lewisbrisbois.com
kerri.keller@lewisbrisbois.com

***Attorneys for Defendant***
***CrossCountry Mortgage, LLC***

# **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that the foregoing submission complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia and has been prepared with double spaces between the lines and using Times New Roman 14-point font size.

/s/ Kerri L. Keller
Kerri L. Keller

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies on this 2nd day of January 2025, a copy of

**DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S OBJECTIONS TO**

**THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** was

served via the Court's ECF system to all counsel of record.

<u>/s/ Kerri L. Keller</u>
Kerri L. Keller